## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| ZALMON UVAYDOV, Derivatively on Behalf of Nominal Defendant FISKER INC., <br><br> Plaintiff, <br><br> v. <br><br> HENRIK FISKER, GEETA GUPTA-FISKER, WENDY J. GREUEL, MARK E. HICKSON, WILLIAM R. MCDERMOTT, RODERICK K. RANDALL, NADINE I. WATT, and WMITCH ZUKLIE, <br><br> Defendants, <br><br> and <br><br> FISKER INC., <br><br> Nominal Defendant. | Case No. _____ <br><br> **JURY TRIAL DEMANDED** |

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff Zalmon Uvaydov ("Plaintiff"), by and through his undersigned attorneys, brings this verified stockholder derivative action on behalf of nominal defendant Fisker Inc. ("Fisker" or the "Company"), against certain of the Company's executive officers and its Board of Directors (the "Board") for breaches of fiduciary duties and violations of federal law by the Individual Defendants (defined below). Plaintiff's allegations are based on personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, based on, *inter alia*, the investigation conducted by his counsel, including review of publicly available information regarding the Company; the allegations of a class action complaint filed in the securities class action captioned *Zahabi v. Fisker Inc., et al.,* Case No. 3:23-cv-06618 (N.D. Cal. Dec. 26, 2023) (the "Securities Class Action"); conference call transcripts and announcements;

filings with the United States Securities and Exchange Commission (the "SEC"); press releases disseminated by Fisker; legal filings; news reports; and securities analysts' reports about the Company.

## NATURE OF THE ACTION

1.      This shareholder derivative action is brought on behalf of Fisker against certain officers and members of the Company's Board for breaches of their fiduciary duties between at least August 4, 2023 and November 20, 2023 inclusive (the "Relevant Period"), and for violations of the federal securities laws caused by the issuance of materially false and misleading statements issued, or caused to be issued, by the Individual Defendants in the Company's SEC filings and other public statements. The Individual Defendants' wrongdoing has exposed the Company to massive potential liability to the class, as well as significant defense costs in the Securities Class Action, as set forth below.

2.      Fisker is an electric vehicle company incorporated in Delaware and based in California. The Company launched its first vehicle, the Fisker Ocean, in the United States in June 2023.

3.      On November 8, 2023, Fisker announced that it would be unable to timely file its financial statements due to the departure and replacement of its chief accounting officer ("CAO"). The Company reported that its new CAO, Florus Beuting ("Beuting"), was hired effective November 6, 2023 and that it "expect[ed] to file its Form 10-Q by November 14, 2023."

4.      On this news, the price of Fisker's stock declined by 8.7% in one day, closing at $3.99 per share on November 8, 2023.

5.      On November 13, 2023, Fisker announced its financial results for the third quarter of 2023, reporting a $91.0 million loss and $0.27 loss per share. Fisker further reported $87.44

million in operating costs and expenses for the quarter, which consisted of $78.02 million in selling, general, and administrative costs and expenses and $9.42 million for research and development. The Company disclosed that while 4,725 Fisker Oceans were built during the quarter, only 1,097 were delivered to customers, and it cut its production forecast for the year. The Company additionally announced that it would fail to timely file its Quarterly Report on Form 10-Q for the fiscal period ended September 30, 2023 and that it had identified "material weaknesses in the Company's internal controls over financial reporting."

6.     On the same day, during an earnings call, the Company attributed its troubles to a "highly complex quarter" including "very complex accounting along with convertible notes and accounting for derivative" and "things like raw material inventory accounting and finished goods inventory accounting." The Company further disclosed that Fisker was failing to deliver its production to customers due to inadequacies with the Company's "delivery and service infrastructure."

7.     On this news, the price of Fisker's stock declined 18.7% in one day, closing at $3.34 per share on November 14, 2023.

8.     On November 20, 2023, Fisker announced that Beuting, the CAO hired mere weeks prior, had, on November 14, 2023, provided notice of his intent to resign effective immediately.

9.     On this news, the price of Fisker's stock declined another 15%, closing at $2.00 per share on November 21, 2023.

10.     On November 22, 2023, Fisker filed its Quarterly Report on Form 10-Q for the fiscal period ended September 30 2023, disclosing "approximately $20 million of expenses" which were "incorrectly recorded primarily as selling, general and administrative expenses in our preliminary earnings results, but were later determined to be associated with production set-up

activities" and that "other inventory adjustments were recorded resulting in a $4.0 million increase in net loss subsequent to the preliminary earnings results."

11.     Throughout the Relevant Period, the Individual Defendants issued false and misleading statements or omitted to state material adverse facts necessary to make the statements not misleading because they failed to disclose that: (i) Fisker had materially deficient internal controls over financial reporting; (ii) Fisker had material errors in its accounting for certain costs; (iii) as a result, Fisker was likely to delay filing its quarterly report; (iv) Fisker lacked adequate delivery and service infrastructure; (v) the Company's infrastructure constraints were limiting its deliveries; and (vi) as a result of the foregoing, the Individual Defendants' positive statements regarding the Company's business, operations, and prospects lacked a reasonable basis.

12.     On November 27, 2023, the Securities Class Action was filed against Fisker and certain of its executive officers, exposing the Company to massive class-wide liability.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. §§ 78j(b) and 78t(a)).

14.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

15.     This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

16.     In connection with the acts, conduct and other wrongs complained of herein, the Individual Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail, and the facilities of a national securities market.

17.     Venue is proper in this District pursuant to Section 27(a) of the Exchange Act and 28 U.S.C. §1391(b)(1), as Fisker is incorporated in this District and a substantial portion of the acts and omissions alleged herein, including the issuance and dissemination of materially false and misleading information, occurred in this District.

## PARTIES

*Plaintiff*

18.     Plaintiff is, and has been at all relevant times, a shareholder of Fisker.

*Nominal Defendant*

19.     Nominal Defendant Fisker is incorporated under the laws of the State of Delaware.

20.     The Company's principal executive offices are located at 1888 Rosecrans Avenue, Manhattan Beach, California 90266.  Fisker's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "FSR."

*Individual Defendants*

21.     Defendant Henrik Fisker is the Co-Founder of Fisker, and he has served as its Chief Executive Officer ("CEO") and Chairman of the Board since 2016. Defendant Henrik Fisker is married to Defendant Geeta Gupta-Fisker ("Gupta-Fisker"). According to the Company's public filings, Defendant Henrik Fisker received $783,255 in 2022 in compensation from the Company. As of April 10, 2023, Defendant Henrik Fisker beneficially owned 81,867,237 shares of Fisker common stock, worth $451,088,475 and constituting 44.1% of the Company's total voting power.[1]

22.     Defendant Gupta-Fisker is the Co-Founder of Fisker, and she has served as its Chief Financial Officer ("CFO") and a member of the Board since 2016. Defendant Gupta-Fisker has

---

[1] Valuations of the Individual Defendants' holdings of Company stock are based on the $5.51 per share closing price of Fisker's stock on April 10, 2023.

5

also served as Fisker's Chief Operating Officer ("COO") since March 2021, and she is married to Defendant Henrik Fisker. According to the Company's public filings, Defendant Gupta-Fisker received $778,585 in 2022 in compensation from the Company. As of April 10, 2023, Defendant Gupta-Fisker beneficially owned 81,867,237 shares of Fisker common stock, worth $451,088,475 and constituting 44.1% of the Company's total voting power.

23.    Defendant Wendy J. Greuel ("Greuel") has served as a member of the Board since June 2020 and serves as Chair of the Audit Committee. According to the Company's public filings, Defendant Greuel received $257,028 in 2022 in compensation from the Company.

24.    Defendant Mark E. Hickson ("Hickson") has served as a member of the Board since July 2020 and serves as a member of the Audit Committee and the Nominating and Corporate Governance Committee. According to the Company's public filings, Defendant Hickson received $247,028 in 2022 in compensation from the Company.

25.    Defendant William R. McDermott ("McDermott") has served as a member of the Board since October 2020 and serves as a member of the Audit Committee. According to the Company's public filings, Defendant McDermott received $267,028 in 2022 in compensation from the Company.

26.    Defendant Roderick K. Randall ("Randall") has served as a member of the Board since March 2018 and serves as a member of the Compensation Committee. According to the Company's public filings, Defendant Randall received $239,528 in 2022 in compensation from the Company.

27.    Defendant Nadine I. Watt ("Watt") has served as a member of the Board since June 2020 and serves as Chair of the Compensation Committee. According to the Company's public filings, Defendant Watt received $250,028 in 2022 in compensation from the Company.

28.     Defendant Mitch Zuklie ("Zuklie") has served as a member of the Board since March 2021 and serves as Chair of the Nominating and Corporate Governance Committee. According to the Company's public filings, Defendant Zuklie received $242,028 in 2022 in compensation from the Company.

## FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

29.     Because of their positions as officers and/or directors of Fisker, and their ability to control the business and corporate affairs of the Company, the Individual Defendants owed Fisker and its shareholders fiduciary obligations of good faith, loyalty, trust, and candor and were required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner at all relevant times.

30.     Therefore, the Individual Defendants were required to act in furtherance of the best interests of Fisker and its shareholders.

31.     Each director and officer of the Company owes to Fisker and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligation of fair dealing.

32.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Fisker, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

33.     Each Individual Defendant, by virtue of his or her position as a director and/or officer owed to the Company and its shareholders the highest fiduciary duties of trust, loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable

violation of their obligations as directors and/or officers of Fisker, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

34.     As senior executive officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on the NYSE, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, financial statements, earnings, internal controls, and present and future business prospects, including the dissemination of false and/or materially misleading information regarding the Company's deficient internal controls over financial reporting and its inadequate delivery and service infrastructure, and the Individual Defendants had a duty to cause the Company to disclose in its regulatory filings with the SEC all those facts described in this Complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful, accurate, and fairly presented information.

35.     To discharge their duties, the officers and directors of Fisker were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company.  By virtue of such duties, the officers and directors of Fisker were required to, among other things:

(a)     Ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Delaware and the United States, and pursuant to Fisker's own Code of Business Conduct and Ethics;

(b)     Exercise good faith to ensure that the affairs of the Company were conducted in an ethical, business-like manner;

(c)     Exercise good faith to ensure that the Company's communications with the public and with shareholders are made with due candor in a timely and complete fashion;

(d)     Remain informed as to how Fisker conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(e)     Establish and maintain systematic and accurate records and reports of the business and internal affairs of Fisker and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(f)     Maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that Fisker's operations would comply with all applicable laws and Fisker's financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate;

(g)     Exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

(h)     Examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above; and

(i)      When put on notice of problems with the Company's business practices, operations, or internal controls, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

36.     The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Fisker.

37.     At all times relevant hereto, the Individual Defendants were the agents of each other and of Fisker and were at all times acting within the course and scope of such agency.

38.     Each of the Individual Defendants breached his or her fiduciary duties as alleged herein, both individually and in concert with the other Defendants.

## FISKER'S CODE OF BUSINESS CONDUCT AND ETHICS

39.     Fisker's Code of Business Conduct and Ethics (the "Code of Conduct") begins with a commitment to "promoting high standards of honest and ethical business conduct and compliance with applicable laws, rules and regulations."

40.     The Code of Conduct applies to "all members of the Company's Board of Directors (the 'directors') and officers, employees, independent contractors and consultants of the Company," and violations of the Code of Conduct may result in disciplinary action, including, "(a) for directors, removal from the Board, legal action or referral for criminal prosecution and (b) for employees (other than directors), termination of employment or service provider relationship for cause, legal action or referral for criminal prosecution."

41.     In a subsection titled "**LEGAL COMPLIANCE**," the Code of Conduct states, in relevant part:

All employees must always obey the law while performing their duties to the Company. The Company's success depends upon each employee operating within

legal guidelines and cooperating with authorities. It is essential that all employees know and understand the legal and regulatory requirements that apply to the Company's business and to their specific area of responsibility.

42.     In a subsection titled "**FINANCIAL INTEGRITY; PUBLIC REPORTING**," the

Code of Conduct states:

> The Company strives to maintain integrity of the Company's records and public disclosure. The Company's corporate and business records, including all supporting entries to the Company's books of account, must be completed honestly, accurately and understandably. The Company's records are important to investors and creditors. They serve as a basis for managing the Company's business and are important in meeting the Company's obligations to business partners, suppliers, vendors, creditors, employees and others with whom the Company does business. The Company depends on the books, records and accounts accurately and fairly reflecting, in reasonable detail, the Company's assets, liabilities, revenues, costs and expenses, as well as all transactions and changes in assets and liabilities.

> To help ensure the integrity of the Company's records and public disclosure, the Company requires that:

> - No entry be made in the Company's books and records that is intentionally false or misleading;
> - transactions be supported by appropriate documentation;
> - the terms of sales and other commercial transactions be reflected accurately in the documentation for those transactions and all such documentation be reflected accurately in the Company's books and records;
> - employees comply with the Company's system of internal controls and be held accountable for their entries;
> - any off-balance sheet arrangements of the Company are clearly and appropriately disclosed;
> - employees work cooperatively with the Company's independent auditors in their review of the Company's financial statements and disclosure documents;
> - no cash or other assets be maintained for any purpose in any unrecorded or "off-the-books" fund; and
> - records be retained or destroyed according to the Company's document retention policies or procedures then in effect.

> ***The Company's disclosure controls and procedures are designed to help ensure that the Company's reports and documents filed with or submitted to the U.S. Securities and Exchange Commission (the "SEC") and other public disclosures are complete, fair, accurate, fairly present the Company's financial condition and results of operations and are timely and understandable.*** Employees who collect, provide or analyze information for or otherwise contribute in any way in

preparing or verifying these reports should be familiar with and adhere to all disclosure controls and procedures and generally assist the Company in producing financial disclosures that contain all of the information about the Company that is required by law and would be important to enable investors to understand the Company's business and its attendant risks. These controls and procedures include, but are not limited to, the following:

- no employee may take or authorize any action that would cause the Company's financial records or financial disclosure to fail to comply with generally accepted accounting principles, the rules and regulations of the SEC or other applicable laws, rules and regulations;
- all employees must cooperate fully with the Company's finance department, as well as the Company's independent auditors and legal counsel, respond to their questions with candor and provide them with complete and accurate information to help ensure that the Company's books and records, as well as its reports filed with the SEC, are accurate and complete; and
- ***no employee should knowingly make (or cause or encourage any other person to make) any false or misleading statement in any of the Company's reports filed with the SEC or knowingly omit (or cause or encourage any other person to omit) any information necessary to make the disclosure in any of such reports accurate in all material respects.***

In connection with the preparation of the financial and other disclosures that the Company makes to the public, including by press release or filing a document with the SEC, ***directors must, in addition to complying with all applicable laws, rules and regulations, follow these guidelines:***

- ***act honestly, ethically, and with integrity;***
- ***comply with this Code;***
- ***endeavor to ensure complete, fair, accurate, timely and understandable disclosure in the Company's filings with the SEC;***
- ***raise questions and concerns regarding the Company's public disclosures when necessary and ensure that such questions and concerns are appropriately addressed;***
- ***act in good faith in accordance with the director's business judgment, without misrepresenting material facts or allowing independent judgment to be subordinated by others; and***
- ***comply with the Company's disclosure controls and procedures and internal controls over financial reporting.[2]***

---

[2] All emphasis is added unless otherwise indicated.

## FISKER'S AUDIT COMMITTEE CHARTER

43.     Fisker's Audit Committee Charter states that the purpose of the Audit Committee is to:

> (A) assist the Board in overseeing (1) the integrity of the Company's financial statements, (2) the Company's compliance with legal and regulatory requirements, (3) the independent auditor's qualifications and independence, and (4) the performance of the Company's internal audit function and independent auditors; (B) provide such reports as may be required of an audit committee under the rules and regulations promulgated under the Securities Exchange Act of 1934, as amended (the "Exchange Act"); and (C) provide oversight with respect to ethical conduct and any related matters.

44.     In a section titled "Authority & Responsibilities," the Audit Committee Charter tasks the Audit Committee with the following:

> 7.     On behalf of the Board, oversee the principal risk exposures facing the Company and the Company's mitigation efforts in respect of such risks, including, but not limited to financial reporting risks, credit and liquidity risks, and environmental and sustainability risks.
>
> * * *
>
> 12.     Periodically receive reports from management regarding, and review and discuss the adequacy and effectiveness of, the Company's disclosure controls and procedures.
>
> 13.     Review and discuss with the independent auditor and management their periodic reviews of the adequacy of the Company's accounting and financial reporting processes and systems of internal control, including any significant deficiencies and material weaknesses in their design or operation.
>
> * * *
>
> 15.     Review, prior to public release, the substance and presentation of financial information (including any guidance) in the Company's annual and quarterly earnings releases.
>
> 16.     Consider the establishment, and oversee the activities, of any internal audit function within the Company
>
> 17.     Discuss with management and the independent auditor the quarterly financial statements prior to the filing of the Form 10-Q, including Management's Discussion and Analysis of Financial Condition and Results of Operations

contained therein; provided that this responsibility may be delegated to the chairman of the Committee or a member of the Committee who is a financial expert.

\* \* \*

28.     Review with the full Board, any issues that arise with respect to the quality or integrity of the Company's financial statements, the Company's compliance with legal or regulatory requirements, the performance and independence of the Company's independent auditor, and the performance of the internal audit function, if applicable.

## SUBSTANTIVE ALLEGATIONS

### Background

45.     Fisker is an electric vehicle company incorporated in Delaware and based in California. The Company launched its first vehicle, the Fisker Ocean, in the United States in June 2023.

### Materially False and Misleading Statements

46.     The Relevant Period begins on August 4, 2023 when Fisker issued a press release announcing the Company's financial results for the second quarter of 2023. The press release stated, in pertinent part:

**Second Quarter 2023 Financial Highlights:**

- Revenue totaled $825 thousand compared to revenue of $10 thousand in the second quarter of 2022.

- Gross margin was 7.5% on a reported basis, and 18.5% excluding discounted early-stage investor deliveries.

- Loss from operations totaled $87.9 million, including $9.0 million of stock-based compensation expense

- Net loss totaled $85.5 million and $0.25 loss per share. Weighted average shares outstanding totaled 335.9 million for the three months ended June 30, 2023.

- Net cash in operating activities totaled $128.1 million and capital expenditures totaled 91.3 million.

- Cash and cash equivalents and restricted cash was $521.8 million as of June 30, 2023; this excludes $300 million in gross proceeds from the July convertible note offering and $33.4 million in VAT receivables which we expect to receive as refunds or to monetize against vehicle sales taxes.

\* \* \*

**2023 Business Outlook**

Fisker expected to produce 20,000-23,000 units in 2023, provided Fisker's suppliers and partners can support this volume and ramp. The following information reflects Fisker's expectations for key non-GAAP operating expenses and capital expenditures for full-year 2023. Fisker is projecting the total of these items to be within a range of $565 million to $640 million. Fisker anticipates an 8-12% gross margin range for full year 2023, provided input costs do not change dramatically.

\* \* \*

**Relevant Updates**

- ***1,022 Fisker Ocean vehicles were produced in Q2 2023. A couple of suppliers had challenges ramping to targeted Q2 levels, but the company is intently focused on working with all suppliers to swiftly ramp. In July, 1,009 Fisker Oceans were produced up from 741 units in June while the assembly rate per day reached 140 at the end of July, up from 80 per day at the end of June.*** July had reduced shifts and fewer working days due to the planned Magna Steyr annual summer shutdown.

- *Fisker updates 2023 production outlook to 20,000-23,000 units as a key supplier required additional time to ramp their capacity to meet our 2H 2023 timeline.*

- The Company began US and European deliveries of the Fisker Ocean One in California, Denmark and Germany with ***11 customer deliveries completed in 1Q*** partly due to a later start in the quarter, logistics optimization, and extra time required to accumulate appropriate quantities for efficient transport.

47. On August 9, 2023, Fisker filed a quarterly report on Form 10-Q with the SEC for the second quarter of 2023 (the "Q2 2023 Form 10-Q"). The Q2 2023 Form 10-Q stated, in pertinent part:

**Recent Developments**

We achieved several key milestones in May, June, July, and August 2023, including (i) the opening of customer facilities in Munich, London, Oslo and Stockholm; (ii) the initiation of the production ramp up phase for the Fisker Ocean; (iii) the achievement by the Fisker Ocean Extreme with 20 inch wheels of an EPA estimated total range of 360 miles; (iv) the receipt by the Fisker Ocean Extreme of both an EPA Certificate of Conformity and a California Air Resources Board Executive Order; (v) ***the commencement of deliveries of the limited edition Fisker Ocean One in Europe and the United States; (vi) the production of 1,022 Fisker Oceans during the second quarter for customer deliveries, as well as units designated for engineering and marketing use; (vii) the production of 1,009 Fisker Oceans in July – reaching an assembly rate of 140 vehicles per day at the end of month;*** (viii) the publishing of our inaugural Lifecycle Assessment report; (ix) the investment in additional battery pack capacity in July to support higher volumes next year; (x) bolstering the balance sheet with a successful offering of $340 million in aggregate principal of 0% senior unsecured convertible notes due in 2025; (xi) completing Fisker's first large-scale media event with production vehicles in Vienna, Austria where two dozen media correspondents test drove Fisker Oceans; and (xii) revealing Fisker's future product lineup at the company's inaugural Product Vision Day.

* * *

As outlined earlier this year, our production forecasts are linked to supply chain readiness and receipt of multiple regulatory homologation approvals across our launch markets. The timing of these approvals shifted in the first half of this year, which impacted our 2023 volume forecasts and supplier ramp readiness. Based on our current supplier capacity expectations, we currently forecast we will produce 20,000 to 23,000 vehicles during 2023.

48.     With respect to revenues and cost of revenues, the Q2 2023 Form 10-Q stated:

In the second quarter of 2023, we began producing vehicles for deliveries to our customers and, accordingly, we are recognizing vehicle revenues from the sale of initial Fisker Ocean SUVs. Merchandise sales and home charging solutions are not intended to comprise a significant portion of the Company's revenues. ***Over the course of the second half of 2023, we will ramp production volumes at a measured pace to ensure the supplier base can delivery high-quality components in line with our serial production run-rate.***

***During the six month period ended June 30, 2023, the Company delivered 11 vehicles and recognized net revenue of $712 thousand with related cost of revenues totaling $665 thousand resulting in gross profit of $47 thousand.*** Gross profit from vehicle sales is lower due to discounts on vehicles sold to certain investors who held rights to a free SUV based on Fisker's based trim level. The

Company had no vehicle sales during the corresponding six month period ended June 30, 2022.

49.     The Q2 2023 Form 10-Q reported the following inventory figures, in thousands, as of June 30, 2023:

| | As of June 30, 2023 |
|---|---|
| Raw materials | 109,090 $ |
| Work in progress | 61,886 |
| Finished goods | 2,020 |
| Total | 172,996 $ |

50.     The Q2 2023 Form 10-Q further reported that, as of June 30, 2023, there were 33,891,845 convertible senior notes and 36,936,742 stock options and warrants excluded from the computation of diluted net loss per share of common stock.

51.     The statements identified above in ¶¶ 46-50 were materially false and misleading and omitted to state material adverse facts necessary to make the statements not misleading because they failed to disclose that: (i) Fisker had a material weakness in its internal controls over financial reporting; (ii) Fisker had material errors in its accounting for certain costs; (iii) as a result, Fisker was likely to delay filing its quarterly report; (iv) Fisker lacked adequate delivery and service infrastructure; (v) the Company's infrastructure constraints were limiting its deliveries; and (vi) as a result of the foregoing, the Individual Defendants' positive statements regarding the Company's business, operations, and prospects lacked a reasonable basis.

***The Truth Emerges***

52.     On September 19, 2023, the Company's CAO, John Finnucan ("Finnucan"), provided notice of intent to resign effective October 27, 2023. Fisker hired Beuting as its new

CAO effective November 6, 2023.

53.     On November 8, 2023, Fisker announced that, due to Finnucan's departure, it would be unable to timely file its financial statements and that it "expects to file its Form 10-Q by November 14, 2023."

54.     On this news, the price of Fisker's stock declined 8.7%, to close at $3.99 per share on November 8, 2023.

55.     On November 13, 2023, Fisker announced its financial results for the third quarter of 2023, reporting a loss of $91.0 million and $0.27 loss per share. Fisker further reported $87.44 million in operating costs and expenses for the quarter, which consisted of $78.02 million in selling, general, and administrative costs and expenses and $9.42 million for research and development. The Company disclosed that while 4,725 Fisker Oceans were built during the quarter, only 1,097 were delivered to customers, and it cut its production forecast for the year.

56.     The Company additionally announced that it would fail to timely file its Quarterly Report on Form 10-Q for the fiscal period ended September 30, 2023, stating on a Form NT 10-Q that:

> As previously disclosed, the timing of the appointment of a new chief accounting officer effective November 6, 2023 and the departure of the former chief accounting officer effective October 27, 2023 delayed the completion of the Company's financial statements and related disclosures, and delayed the completion of the Company's quarterly assessment of the effectiveness of its disclosure controls and procedures.
>
> In the course of completing the preparation of the Report*, the Company determined that it has material weaknesses in the Company's internal control over financial reporting.* These material weaknesses will be discussed in the Report.

57.     The Form NT 10-Q further indicated that the Company responded "Yes" to the following question:

Is it anticipated that ***any significant change in results of operations from the corresponding period for the last fiscal year will be reflected by the earnings statements*** to be included in the subject report of portion thereof?

58.     During an earnings call held on the same day, Defendant Gupta-Fisker attributed

the Company's troubles to a "highly complex quarter," stating:

> Went from $800,000 of revenue to $71 million of revenue. In multiple countries, For ex., ***very complex accounting along with convertible notes and accounting for derivatives***. So we experienced quite a lot of complexity in the business, and as you rightly pointed out, personnel changes as well. We, of course, continue to understand all these different areas. We are continuing to hire. . . . Some other areas that were extremely complex were because of contract manufacturing, ***things like raw material inventory accounting and finished goods inventory accounting, things that we had not done before and extremely complex as you look at IT integrations with Magna, in-house integrations.*** So these unfortunately growing pains and we are addressing all these different areas so we can also mature our systems, hire more people, hire more talent to address all these different areas, and it's a work in progress. We are working tirelessly, very hard to get the queue done, so more to

59.     During the earnings call, Defendant Gupta-Fisker further disclosed that Fisker was

failing to deliver its production to customers due to inadequacies with the Company's "delivery

and service infrastructure," stating:

> ***Neither our production nor demand are limiting our deliveries, but rather it's the delivery and the service infrastructure.*** We have a great product and our customers want the product. We are in the process of dramatically overhauling our service and delivery infrastructure to keep up with the demand until the delivery process has reached our goal, which we expect later this year.

60.     On this news, the price of Fisker's stock declined 18.7% in one day, closing at $3.34

per share on November 14, 2023.

61.     On November 20, 2023, Fisker announced that Beuting, the CAO hired mere weeks

prior, had, on November 14, 2023, provided notice of his intent to resign effective immediately.

Specifically, the Company announced: "On November 14, 2023, Florus Beuting, the chief

accounting officer of Fisker Inc. (the "Company"), provided notice of his intent to resign from the

Company effective immediately."

62.     On this news, the price of Fisker's stock declined 15% in one day, closing at $2.00 per share on November 21, 2023.

63.     On November 22, 2023, Fisker filed its Quarterly Report on Form 10-Q for the fiscal period ended September 30 2023, disclosing "approximately $20 million of expenses" which were "incorrectly recorded primarily as selling, general and administrative expenses in our preliminary earnings results, but were later determined to be associated with production set-up activities" and that "other inventory adjustments were recorded resulting in a $4.0 million increase in net loss subsequent to the preliminary earnings results."

64.     The Company therefore reported a net loss of $95.22 million for the three months ended September 30, 2023 and a net loss of $298.38 million for the nine months ended September 30, 2023.

65.     Fisker additionally reported $71.08 million in total operating costs for the three months ended September 30, 2023, consisting of $67.65 million in selling, general, and administrative operating costs and expenses and $13.42 million for research and development.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

66.     Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the Individual Defendants' breaches of fiduciary duties and other violations of law.

67.     Fisker is named solely as a nominal party in this action.  This is not a collusive action to confer jurisdiction on this Court that it would otherwise not have.

68.     Plaintiff will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and retained counsel competent and experienced in derivative

litigation.

69.     Plaintiff is an owner of Fisker stock and has been a continuous holder of the Company's common shares at all relevant times.

70.     As of the date of filing, the eight-member Board is comprised of Defendants Henrik Fisker, Gupta-Fisker, Greuel, Hickson, McDermott, Randall, Watt, and Zuklie. Accordingly, Plaintiff is only required to show that four directors cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action. As set forth below, all of the Board's current directors are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action, including because they face a substantial likelihood of liability, and so demand on the Board to institute this action is not necessary because such a demand would have been a futile act.

71.     The Individual Defendants, together and individually, violated and breached their fiduciary duties of candor, good faith, and loyalty. Specifically, the Individual Defendants knowingly approved and/or permitted the wrongs alleged herein and participated in efforts to conceal those wrongs. The Individual Defendants authorized and/or permitted the false statements to be disseminated directly to the public and made available and distributed to shareholders, authorized, and/or permitted the issuance of various false and misleading statements, and are principal beneficiaries of the wrongdoing alleged herein. Accordingly, the Individual Defendants could not fairly and fully prosecute such a suit even if they instituted it.

72.     The Individual Defendants either knowingly or recklessly issued or caused the Company to issue the materially false and misleading statements alleged herein. The Individual Defendants knew of the falsity of the misleading statements at the time they were made. As a result of the foregoing, the Individual Defendants breached their fiduciary duties, face a substantial

likelihood of liability, are not disinterested, and demand upon them is futile, and thus excused.

73.     As members of the Board charged with overseeing the Company's affairs, each of the Individual Defendants had knowledge, or the fiduciary obligation to inform themselves, of information pertaining to the Company's core operations and the material events giving rise to these claims. Specifically, as Board members of Fisker, the Individual Defendants knew, or should have known, the material facts surrounding the Company's deficient internal controls over financial reporting and its inadequate delivery and service infrastructure.

74.     Defendant Henrik Fisker and Gupta-Fisker are not disinterested or independent, and therefore, are incapable of considering a demand because they are named as defendants, and face significant personal liability, in the Securities Class Action based on substantially the same wrongdoing as alleged herein, specifically issuing materially false and misleading statements during the Relevant Period.

75.     Defendants Greuel, Hickson, and McDermott serve as members of the Audit Committee and, pursuant to the Charter, were specifically charged with the responsibility of assisting the Board in fulfilling its oversight responsibilities related to internal controls over financial reporting and public disclosure requirements. Throughout the Relevant Period, however, these Defendants breached their fiduciary duties to the Company by failing to prevent, correct, or inform the Board of the issuance of material misstatements and omissions regarding material deficiencies in the Company's accounting practices and the adequacy of the Company's internal controls as alleged above. Therefore, Defendants Greuel, Hickson, and McDermott cannot independently consider any demand to sue themselves for breaching their fiduciary duties to the Company, as that would expose them to substantial liability and threaten their livelihood.

76.     Additionally, each of the directors received payments, benefits, stock options, and other emoluments by virtue of their membership on the Board and their control of the Company. Indeed, all of the Individual Defendants benefitted directly from the wrongdoing alleged herein. Specifically, the Individual Defendants benefitted from the artificial inflation of the price of the Company's stock and the resulting increase in the value of Fisker stock and stock options they held.

77.     The Individual Defendants, as members of the Board, were and are subject to the Company's Code of Conduct. The Code of Conduct goes well beyond the basic fiduciary duties required by applicable laws, rules, and regulations, requiring the Individual Defendants to also adhere to Fisker's standards of business conduct. The Individual Defendants violated the Code of Conduct because they knowingly or recklessly engaged in and participated in making and/or causing the Company to make the materially false and misleading statements alleged herein. Because the Individual Defendants violated the Code of Conduct, they face a substantial likelihood of liability for breaching their fiduciary duties, and therefore demand upon them is futile.

78.     Furthermore, demand in this case is excused because each of the directors derive substantial revenue from the Company, control the company, and are indebted to each other. These conflicts of interest have precluded the current directors from adequately monitoring the Company's operations and internal controls and calling into question the other Individual Defendants' conduct. Significantly, none of the Individual Defendants have taken remedial action to redress the conduct alleged herein. As Defendants Henrik Fisker and Gupta-Fisker are married, they are particularly indebted to each other and are thus incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

79.     The Individual Defendants' conduct described herein and summarized above could

not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the directors can claim exculpation from their violations of duty pursuant to the Company's charter. As a majority of the directors face a substantial likelihood of liability, they are self-interested in the transactions challenged herein. They cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company. Accordingly, demand is excused as being futile.

80.    The acts complained of herein constitute violations of fiduciary duties owed by Fisker's officers and directors, and these acts are incapable of ratification.

81.    The Individual Defendants may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds, *i.e.*, monies belonging to the stockholders of Fisker. If there is a liability insurance policy covering the Individual Defendants, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Individual Defendants, known as, *inter alia*, the "insured-versus-insured exclusion." As a result, if the Individual Defendants were to sue themselves or certain officers of Fisker, there would be no insurance protection. Accordingly, the Individual Defendants cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the Company to effectuate a recovery. Thus, demand on the Individual Defendants is futile and, therefore, excused.

82.    If there is no liability insurance, then the Individual Defendants will not cause Fisker to sue the Defendants named herein, since, if they did, they would face a large uninsured

individual liability. Accordingly, demand is futile in that event as well.

83.     Accordingly, for all of the reasons set forth above, all of the current directors cannot consider a demand with disinterestedness and independence. Consequently, a pre-suit demand on the Board is futile and excused.

## COUNT I
### Against the Individual Defendants for
### Breach of Fiduciary Duties

84.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

85.     The Individual Defendants owed the Company fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

86.     The Individual Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

87.     The Individual Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties. Among other things, the Individual Defendants breached their fiduciary duties of loyalty and good faith by permitting the use of inadequate practices and procedures to guide the truthful dissemination of Company news to the investing public and to the Company's shareholders, allowing or permitting false and misleading statements to be disseminated in the Company's SEC filings and other disclosures, and otherwise failing to ensure that adequate internal controls were in place regarding the serious business reporting issues and deficiencies described above. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

88.     As a result of the misconduct alleged herein, the Individual Defendants are liable

to the Company. As a direct and proximate result of the Individual Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill. Such damage includes, among other things, costs incurred in defending itself in the Securities Class Action, exposing the Company to millions of dollars in potential class-wide damages in the Securities Class Action, and damage to the share price of the Company's stock, resulting in an increased cost of capital, and reputational harm.

89.     Plaintiff, on behalf of Fisker, has no adequate remedy at law.

### COUNT II
**Against the Individual Defendants for Aiding and
Abetting Breach of Fiduciary Duty**

90.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

91.     By encouraging and accomplishing the illegal and improper actions alleged herein and concealing them from the public, the Individual Defendants have each encouraged, facilitated, and advanced their breaches of their fiduciary duties. In so doing, the Individual Defendants have each aided and abetted, conspired, and schemed with one another to breach their fiduciary duties, waste the Company's corporate assets, and engage in the ultra vires and illegal conduct complained of herein.

92.     Plaintiff, on behalf of Fisker, has no adequate remedy at law.

### COUNT III
**Against the Individual Defendants for
Unjust Enrichment**

93.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

94.     By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of Fisker.

95.     The Individual Defendants were unjustly enriched by their receipt of bonuses, stock options, or similar compensation from Fisker that was tied to their performance or to the artificially inflated valuation of Fisker.

96.     Plaintiff, as a stockholder and representative of the Company, seeks restitution from the Individual Defendants, and seeks an order from this Court disgorging all profits, benefits, and other compensation obtained by the Individual Defendants as a result of their wrongful conduct and fiduciary breaches.

97.     As a direct and proximate result of the Individual Defendants' misconduct, the Company has suffered significant damages, as alleged herein.

98.     Plaintiff, on behalf of Fisker, has no adequate remedy at law.

### COUNT IV
### Against the Individual Defendants for Violations of § 10(b)
### of the Exchange Act and Rule 10b-5

99.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

100.     The Individual Defendants violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

101.     The Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the materially false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

102.    The Individual Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (iii) engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff.

103.    The Individual Defendants acted with scienter because they: (i) knew that the public documents and statements issued or disseminated in the name of Fisker were materially false and misleading; (ii) knew that such statements or documents would be issued or disseminated to the investing public; and (iii) knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws.

104.    The Individual Defendants, by virtue of their receipt of information reflecting the true facts of Fisker, their control over, and/or receipt and/or modification of the materially misleading statements alleged herein, and/or their associations with the Company which made them privy to confidential proprietary information concerning Fisker, participated in the fraudulent scheme alleged herein.

105.    As a result of the foregoing, the market price of Fisker common stock was artificially inflated during the relevant time period. In ignorance of the falsity of the statements, Plaintiff relied on the statements described above and/or the integrity of the market price of Fisker common stock in purchasing Fisker common stock at prices that were artificially inflated as a result of these false and misleading statements and were damaged thereby.

106.    In addition, as a result of the wrongful conduct alleged herein, the Company has suffered significant damages, including the costs and expenses incurred in defending itself in the

Securities Class Action and reputational harm. The Individual Defendants, through their violation of Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5, have exposed the Company to millions of dollars in potential class-wide damages in the Securities Class Action.

107.    By encouraging and accomplishing the illegal and improper transactions alleged herein and concealing them from the public, the Individual Defendants have each encouraged, facilitated, and advanced their breaches of their fiduciary duties. In so doing, the Individual Defendants have each aided and abetted, conspired, and schemed with one another to breach their fiduciary duties, waste the Company's corporate assets, and engage in the ultra vires and illegal conduct complained of herein.

108.    Plaintiff on behalf of Fisker has no adequate remedy at law.

**COUNT V**
**Against the Individual Defendants**
**for Waste of Corporate Assets**

109.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

110.    The Individual Defendants breached their fiduciary duties by failing to properly supervise and monitor the adequacy of Fisker's internal controls, by issuing, causing the issuance of, and/or failing to correct the false and misleading statements identified herein, and by allowing the Company to engage in an illegal, unethical, and improper course of conduct, which was continuous, connected, and ongoing at all relevant times.

111.    As a result of the misconduct described above, the Individual Defendants wasted corporate assets by, among other things, incurring and paying defense costs in connection with the Securities Class Action, and approving performance-based compensation linked to the Company's perceived successes.

112.    As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

113.    Plaintiff on behalf Fisker has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.    Awarding money damages against all Individual Defendants, jointly and severally, for all losses and damages suffered as a result of the acts and transactions complained of herein, together with pre-judgment interest, molded in a fashion to ensure the Individual Defendants do not participate therein or benefit thereby;

B.    Directing all Individual Defendants to account for all damages caused by them and all profits and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct, including all salaries, bonuses, fees, stock awards, options and common stock sale proceeds, and imposing a constructive trust thereon;

C.    Awarding punitive damages;

D.    Awarding costs and disbursements of this action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.    Granting such other and further relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: February 1, 2024

**RIGRODSKY LAW, P.A.**

By: */s/ Gina M. Serra*
Seth D. Rigrodsky (#3147)
Gina M. Serra (#5387)
Herbert W. Mondros (#3308)
300 Delaware Avenue, Suite 210
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: sdr@rl-legal.com
Email: gms@rl-legal.com
Email: hwm@rl-legal.com

**MORRIS KANDINOV LLP**
Leonid Kandinov
550 West B Street, 4th Floor
San Diego, CA 92101
(619) 780-3993
leo@moka.law

*Attorneys for Plaintiff*